In re PHAR–MOR, INC.,
et al., Debtors.

Phar–Mor, Inc., et al., Plaintiffs,

v.

Florida Self–Insurers Guaranty
Association, Inc.,
Defendant.

Bankruptcy No. 01–44007.
Adversary No. 05–4009.

United States Bankruptcy Court,
N.D. Ohio.

Nov. 1, 2005.

Michael A. Gallo, Youngstown, OH, Mark B. Joachim, Morrison & Foerster LLP, New York, NY, Michael L. Malkin, Beachwood, OH, Timothy M. Reardon, Youngstown, OH, for Phar–Mor, Inc.

## MEMORANDUM OPINION

KAY WOODS, Bankruptcy Judge.

This cause is before the Court on a motion filed by Florida Self–Insurers Guaranty Association, Inc. ("Florida Self–Insurers") to dismiss an adversary proceeding commenced by Phar–Mor, Inc., *et al.* ("Debtor"). The motion to dismiss is based on (i) lack of subject matter jurisdiction pursuant to 11 U.S.C. § 541 and (ii) failure to state a claim upon which relief can be granted. Debtor filed a response brief and Florida Self–Insurers filed a reply. This Court has jurisdiction pursuant to 28 U.S.C. § 157(b). Venue in this Court is proper pursuant to 28 U.S.C. § 1409(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E) and (O). The following constitutes the Court's findings of fact and conclusions of law pursuant to FED. R. BANKR.P. 7052.

## I. *STANDARD FOR REVIEW*

A party may bring a motion to dismiss for failure to state a claim pursuant to FED.R.CIV.P. 12(b)(6) to test whether a cognizable claim has been pled in the complaint. If a plaintiff fails to state a cognizable claim, the court can dismiss the complaint.[1]

In determining whether to grant a motion to dismiss, the court must analyze the complaint. To withstand dismissal, the complaint must provide a plain and clear statement of the claim that shows the plaintiff is entitled to relief, provide the defendant with notice of the claim, and the

grounds upon which the claim rests. *See* FED.R.CIV.P. 8(a); *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "The complaint need not specify all the particularities of the claim, and if the complaint is merely vague or ambiguous, a motion under Fed.R.Civ.P. 12(e) for a more definite statement is the proper avenue rather than under Fed.R.Civ.P. 12(b)(6)." *Aldridge v. United States*, 282 F.Supp.2d 802, 803 (2003) (citing 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1356 (2d. ed.1990)).

FED.R.CIV.P. 12(b)(6), applicable to this case through FED. R. BANKR.P. 7012, requires that a complaint be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can not prove a set of facts to support a claim that would entitle the plaintiff to relief. *Conley*, 355 U.S. at 45–46, 78 S.Ct. 99. In determining the sufficiency of a complaint, the court must construe the complaint in the light most favorable to the plaintiff, accept the allegations set forth as true, and resolve any ambiguities in favor of the plaintiff. *Jackson v. Richards Med. Co.*, 961 F.2d 575, 577–78 (6th Cir.1992); *Aldridge*, 282 F.Supp.2d at 803. However, the court is not required to accept "sweeping unwarranted averments of fact," *Official Committee of Unsecured Creditors v. Austin Financial Services, Inc. (In re KDI Holdings, Inc.)*, 277 B.R. 493, 502 (Bankr. S.D.N.Y.1999) (quoting *Haynesworth v. Miller*, 820 F.2d 1245, 1254 (D.C.Cir. 1987)), or "conclusions of law or unwarranted deduction." *KDI Holdings Inc.*, 277 B.R. at 502 (quoting *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir.1994)); see also *Lewis v. ACB*

---

1. The court's dismissal of meritless claims precludes the waste of judicial resources.

*Neitzke v. Williams*, 490 U.S. 319, 326–27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

*Bus. Servs., Inc.,* 135 F.3d 389, 405–06 (6th Cir.1998). Thus, in evaluating a 12(b)(6) motion, the court should construe the complaint very liberally. *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976).

## II. FACTS

Because this is a motion to dismiss, the Court must accept all facts pled in the complaint as true. Debtor alleges the following facts: Debtor formerly operated a chain of discount drugstores with its principal headquarters in Youngstown, Ohio. Debtor operated such drugstores in various states, including Florida. Debtor filed for protection under Title 11 of the Bankruptcy Code on September 24, 2001. Phar–Mor was reinstated possession of its property pursuant to § 1141(b) of the Bankruptcy Code and the Order Confirming Joint Plan of Liquidation entered March 13, 2003.

Florida Self–Insurers is a Florida nonprofit corporation created by statute (FLA. STAT. § 440.285) that is responsible for the payment of the self-insured workers' compensation claims of insolvent employers in Florida.

From March 1, 1986 through March 31, 1996, Debtor was self-insured for workers' compensation exposure in Florida. Due to this election, Debtor was required to post a letter of credit to assure performance of obligations imposed upon it as a self-insured employer. FLA. STAT. § 440.38(1)(B). As a result, Debtor obtained for the benefit of Florida Self–Insurers a letter of credit issued by Fleet National Bank in the amount of Eight Hundred Eighty Thousand Dollars ($880,000.00) ("Letter of Credit"). The Letter of Credit continued to remain in effect post-petition.[2]

Debtor retained various administrators and excess insurance carriers to review, process and satisfy workers' compensation claims. From and after April 1, 1991, AIG Insurance ("AIG") served as the administrator and excess insurance carrier for Debtor's workers' compensation claims in Florida. Individual workers' compensation claims that exceeded Two Hundred Fifty Thousand Dollars ($250,000.00) were fully insured by AIG.

Post-petition, in or about March 2003, Florida Self–Insurers undertook the payment of one of Debtor's self-insured workers' compensation claims after it was informed that said claim was not being paid.[3] As a result of an error, this claim was not paid by AIG. Prior to paying the claim, on or about February 15, 2003, Florida Self–Insurers drew down the entire Letter of Credit to pay such claim. Since that time Florida Self–Insurers has held the entire proceeds of the Letter of Credit.

Subsequently, Debtor quit paying any of its workers' compensation claims in Florida. There are currently eight (8) unresolved and/or open claims (collectively "Claims") brought by Debtor's former employees through 1996, the last year Debtor's retained employees in Florida. These Claims fall within Debtor's self-insured retention obligation.

---

**2.** To secure the repayment of pre-filing indebtedness, Debtor granted Fleet pre-petition first priority liens on substantially all of its assets. In order to continue the operation of its business, Debtor entered into a DIP financing agreement, which permitted Debtor to obtain up to One Hundred Thirty–Five Million Dollars ($135,000,000.00) in new funds needed to perform day-to-day operations. The DIP financing agreement included a Twenty

Million Dollar ($20,000,000.00) sublimit for letters of credit. The post-petition Letter of Credit was included in Debtor's DIP financing. The DIP financing arrangement has been paid in full.

**3.** The amount of the claim was Twenty–Six Thousand Two Hundred Eighty–One and 72/100 Dollars ($26,281.72).

Florida Self–Insurers is holding the proceeds from the Letter of Credit to ensure full satisfaction of the pending Claims. In its complaint, Debtor seeks an accounting to determine the amount of the excess proceeds from the Letter of Credit ("Excess Proceeds") and to have such Excess Proceeds returned to it. Debtor has an actuarial report, which estimates that the maximum recovery due to or to become due on the Claims is Three Hundred Thirty–Two Thousand Dollars ($322,000.00). Debtor believes, and Florida Self–Insurers has not denied, that Florida Self–Insurers has retained an actuarial report that determined the maximum recovery due to or to become due for payment on the Claims to be Four Hundred Thousand Dollars ($400,000.00).

### III. *DISCUSSION*

### A. Subject Matter Jurisdiction

It is well understood that the Bankruptcy Court has jurisdiction over assets of the bankruptcy estate. Section 541 of Title 11 defines "[p]roperty of the estate." Section 541 specifically states: "The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held: ... **all legal or equitable interests** of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a) (emphasis added). The House and Senate reports on the Bankruptcy Code indicate that § 541(a)(1)'s scope is broad and includes all kinds of property. *U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 204–05, 103 S.Ct. 2309, 76 L.Ed.2d 515 (citing, H.R.REP. No. 95–595, at 367 (1977); S.REP. No. 95–989, at 82 (1978)).

 Florida Self–Insurers argues that letters of credit are not property of a bankruptcy estate. This Court agrees with that statement; hence, Florida Self–Insurers was able to draw down the Letter of Credit. However, in the instant case, the Court is not dealing with a letter of credit but rather with the proceeds of the Letter of Credit. When Florida Self–Insurers drew down the Letter of Credit, the letter automatically terminated and proceeds were generated by the draw down. The issue in the instant case is whether Florida Self–Insurers is holding more than it needs to satisfy Debtor's obligation (*i.e.*, the Excess Proceeds) and if so, what that amount is. A dispute over proceeds of a letter of credit is different from a dispute about the underlying contract on such a letter. *Demczyk v. The Mut. Life Ins. Co. of N.Y. (In re Graham Square, Inc.)*, 126 F.3d 823, 828 (6th Cir.1997).

Florida Self–Insurers is only entitled to retain sufficient proceeds from the Letter of Credit to satisfy Debtor's obligation. To the extent there are any Excess Proceeds, such amount necessarily belongs to and must be returned to Debtor. As a consequence, there is no question that, pursuant to § 541(a)(1) of Title 11, Debtor has a "legal or equitable interest" in any Excess Proceeds. Florida Self–Insurers has failed to cite any cases that carve out Excess Proceeds from a letter of credit from the broad definition of property of the bankruptcy estate, nor is this Court aware of such a case.

Because excess proceeds from a letter of credit constitute property of a bankruptcy estate, this Court has subject matter jurisdiction over the complaint.

### B. Failure to State a Claim

 The dispute in this case is over Excess Proceeds. Florida Self-insurers allege that Debtor failed to state a cognizable claim in its complaint regarding the

Excess Proceeds.[4] The Court disagrees with Florida Self–Insurers.

Florida Self–Insurers admits that it only has a possessory right to the Excess Proceeds and not an ownership right. Florida Self–Insurers states, "the entity [Florida Self–Insurers] to which property has been pledged is obligated to maintain **possession** of that property[.]" (Motion to Dismiss at 3 (emphasis added).) Florida Self–Insurers further states, "... as the total extent of [Florida Self–Insurers'] exposure cannot yet be determined, the amount of surplus, if any, cannot yet be determined. Until that occurs, [Florida Self–Insurers] is under no obligation to transfer monies to Debtor[.]" (*Id.* at 9.) It is evident from these statements that Florida Self–Insurers acknowledges that it has only a possessory interest in the Excess Proceeds and not an ownership interest. These statements demonstrate, also, that Florida Self–Insurers admits that it is required to return any Excess Proceeds to Debtor.[5]

It appears from both parties' actuarial estimates that the total amount of the draw down on the Letter of Credit (*i.e.* $880,000.00) exceeds the amount needed to satisfy the Claims. Based on the alleged actuarial reports there could be Excess Proceeds.

In viewing the complaint in the light most favorable to Debtor, Debtor has stated a cognizable claim. Debtor alleges it is entitled to an accounting to determine if there are any Excess Proceeds and turnover of such Excess Proceeds, if any. Debtor represents that Florida Self–Insurers is holding proceeds from the Letter of Credit that appear to be in excess of the amount needed to satisfy the Claims. By Florida Self–Insurers own admissions, any Excess Proceeds are part of Debtor's estate.

## V. CONCLUSION

Proceeds from a letter of credit in excess of the amount needed to satisfy Debtor's obligation are part of the bankruptcy estate because such proceeds must be returned to the estate. In viewing the complaint in the light most favorable to Debtor, Debtor states a claim upon which relief can be granted. Florida Self–Insurers' motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted is denied.

An appropriate order will follow.

## ORDER

For the reasons set forth in this Court's Memorandum Opinion entered this date, Florida Self–Insurers' motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted is denied.

**IT IS SO ORDERED.**

---

**4.** Florida Self–Insurers has spent a great deal of time discussing the merits of the case, which the Court will not address. A motion to dismiss for failure to state a claim does not go to the merits of the claim, but whether a cognizable claim has been pled in the complaint.

**5.** The DIP financing arrangement from which the proceeds of the Letter of Credit were drawn has been paid in full. As a result, the Excess Proceeds, if any, are part of the estate and are not subject to a secured interest.